Honours, my name is Kevin Nash and I am here on behalf of the appellant. We are challenging the rulings below essentially on misapplication of Canadian law. This is a somewhat unique situation. The case arises and the claim in the SageCrest bankruptcy arises out of a Canadian insolvency proceeding involving a Canadian hotel property, involving Canadian attorneys, and the essence of the claim is that Equal Overseas was involved in the bankruptcy proceedings at various levels. When I say bankruptcy, it's the Canadian bankruptcy proceeding. And there was a time where the bidding on this hotel was reopened for a brief period of time. My client, Equal Overseas, earlier in the process was a potential bidder. It dropped out of the bidding and it- Was there a conflict here between Canadian and American law? In other words, even if you applied Canadian law, would it have made a difference to the result, given the factual findings? I think it does. I don't think this is an esoteric discussion in terms of choice of law. I think there is a different type of standard in Canada in terms of the ability to withdraw from bidding, the ability to withdraw from bidding in your own self-interest. Now I think what's interesting in the case here is that my client in the case itself withdrew from the bidding became a potential lender and when the alternative- I'm looking at the Canadian Competition Act. Right. Which defines bid rigging. And it says it's a crime for someone, for an agreement between two or among two or more persons whereby one or more agrees not to submit a bid or undertakes to withdraw. Isn't that precisely what happened here? No, no. What happened here is that at the time, on October 16th, when this phone call was made, my client was not a bidder. If anything, my client was a potential- Did he not? Potential bidder. What? He was a potential bidder. He was a potential lender. If anything, he was a potential lender to another bidder. But by that time, this is a day and a half before the bids are due on the 18th, my client was in France when he got the call, so he had less than 36 hours to do anything. And all he said was, I'd like to be a partner in the relationship. And the following day, the attorneys, you must understand this settlement was reached by the attorneys in operating in Canada. Did he not agree to withdraw his financial support for a competing bid and to refrain from submitting his own bid or from supporting any alternative bid? No. He didn't agree to those things? No. In the first preamble of the settlement agreement, he had already, and he confirmed it, he had already withdrawn any financial support of the alternative. These are factual issues, right? And there was a trial, and the bankruptcy court made findings. It did, and it certainly did. I'm not running away from that. But they looked at the case under the- The court found collusion. They looked at the collusion under primarily the Section 363N of the Bankruptcy Code. And the district court focused exclusively on Section 363N of the Bankruptcy Code. Why wasn't the district court perfectly entitled to, the bankruptcy court, to apply U.S. law to this transaction? I mean, the controversy arose, was framed by a proof of claim filed in Connecticut. Yes, but the rub here is the settlement agreement, the consulting agreement, has expressed Canadian choice of law provisions. So this court has written the Roby decision. I think the Roby decision is what's at issue here. And the issue is, when you disregard or you overrule or you override the expressed choice of law provisions, you do that in limited circumstances where there's no remedies in Canada to address this. And certainly, there are remedies in Canada to address it. This arrangement, do you contest, was not fraudulent in Canada? I say it was not fraudulent in Canada, yes. Why? Because he was not bidding. He had the ability as a non-bidder. That's what bid rigging involves. I'll withdraw my bid and you go ahead and you go ahead at an advantageous price. But that is true bid rigging, but that's not what happened here. He was not a bidder, and he didn't solicit this. And this arrangement that was really negotiated was negotiated by counsel. Whether it was done by counsel doesn't really change too much. I mean, the bankruptcy court in Canada reopened the bidding process so that the creditors would benefit, right? That it would withdraw additional bids, which might then increase the value of the property realized by the creditors, right? That's an excellent point. Okay, but let me finish. And then what happened here is that Cohen agreed to stifle the bidding process for a price. He agreed to not make a bid, and he agreed not to assist in somebody else's bid, right? No. Well, that's the factual finding of the bankruptcy court after a trial, isn't it? What really happened here, and I think it's there in the record. Was that a factual finding? I don't believe so. I think the bankruptcy court looked at the timing and the context. But the Cohen arrangement and settlement, and this is very important. The Cohen arrangement and settlement with Sagecrest resulted in an increased bid from Sagecrest from $1.7 million for unsecured credits to $5.1 million. Right, right. But if there had been other bidders, it might have caused even higher bids. And so it would seem to me, just as a matter of economics, that the money paid to Cohen, at very least, was a drag on the bid that was made by the winning bidder. But there was no other bidders. And that's the item. In the appendix at five, the factual finding is Cohen told Gwynne he was planning to resubmit his $42 million offer. So you have a finding that he was going to resubmit his bid. Then he was persuaded not to because an agreement was made to pay him money. Are those factual findings clearly erroneous? Yes, because the testimony, and they don't even argue that it was done as a quid pro quo. What Cohen said, he said when he got the phone call, I'm going to keep my options open. And from there, there was discussions, brief discussions. I would like to be a partner in the transaction. And from there, the attorneys developed an integrated settlement and Cohen gave her leases. He put up money in escrow for another creditor by the name of Knob Hill. And there was a comprehensive agreement. And in that agreement, there was an acknowledgement, A, he was no longer, he had stopped his interest in the transaction with the alternate bidder. The alternate bidder came in there without any money, and he was shown not to have any money. That was reported to the monitor. And the upshot, and the reason why people are happy with the change of events, is because when the bidding was closed, the week before is at $1.7 million, and now the revised bid is $5.1 million. So the notion that there was harm to unsecured creditors is not true. Now, we're supposing that if Cohen was bidding, he would have perhaps jumped that money up initially beyond $5.1 million. The problem with that is, there's testimony here, he was not a bidder. And- You're confusing me. What exactly are you arguing? Is this a closing argument to a court? Or are you arguing that the facts as found by the bankruptcy court are clearly erroneous? Or are you arguing that this scheme that your client, arrangement your client participated in, didn't violate federal law? I'm arguing- Where are you on this? Where I am on this, my primary argument is that it should have been under Canadian law. And it should have been exclusively under Canadian law. And the choice of law provisions should have been controlling. And I'm arguing that it does make a difference, because under Canadian law, this settlement did not violate the Anti-Competition Act. And the attorneys looked at it, they understood it, and they were confident that there was no violations on both sides. The Sagecrest attorney and my client's attorney. So, I can't run from the notion of collusion. That's bad under any country's law. But there are different rules, and there's different nuances in collusion between Canada and America. And I think this passes muster under Canada, Canadian law. And I think to apply Canadian law, you have to give effect to the choice of law provision. And it was overridden here. Thank you, thank you. You've saved some time for rebuttal. Thank you. Let's hear from the other side, and then you'll get your rebuttal. Thank you. Good morning, your honors. Lawrence May, may it please the court, Lawrence May on behalf of the appellee, the Sagecrest Liquidating Trust. Your honor, on December 23rd, 2015, the United States Bankruptcy Court for the District of Connecticut issued its decision order and findings of fact, expunging a proof of claim filed by equal oversees in the chapter 11 cases of Sagecrest Limited and Varivitz Affiliates. The bankruptcy court found, as a matter of fact, that the claim which appellate contended was a, I quote, consulting agreement in a settlement agreement, close quote, between appellant and an entity known as Sagecrest Dixon was not what it purported to be. According to the bankruptcy court findings coming after a two day trial, based on the evidence that was presented to it, the settlement agreement and the subsequent consulting agreement were, quoting from the bankruptcy court decision, side deals between Sagecrest and the appellant's principal, Jean Daniel Cohn, again quoting from the bankruptcy court. I think we've read the bankruptcy court's opinion and clearly that's the case. And then the bankruptcy court concluded that under either Canadian law or American law, that would not be, therefore, enforceable. It would be voidable, right? That's correct. Couldn't collect on that in bankruptcy. The district court, however, didn't apply Canadian law. The district court applied US law. And so, is that a problem? No. First of all, the district court didn't reverse or take issue with the bankruptcy court's determination. But it didn't affirm it on that ground. That's correct. But as a matter of US law, we had a proof of claim that was- Are you arguing that US law was properly applied? Or are you arguing that- I'm arguing it doesn't matter. There's no reason to send this back because the bankruptcy court was correct and we can find that here. Right. It doesn't matter. The bankruptcy court found that as a matter of Canadian law, this agreement would be unenforceable. And in doing so, it cited a couple of different propositions. Two of which are common law principles, which are equally applicable in US courts. That's the impari delicto and ex causae terpi principles. And it relied upon principles of a case called Sound Air, which is a Canadian case, which talks about the integrity of the process. And the Canadian case says that they will not, this case stands for the proposition that we would not enforce this kind of an arrangement if it affected the integrity of the process. And the bankruptcy court found specifically that the integrity of the process was affected by this particular transaction and the way this thing came about. And indeed, if you look at the appellant's brief and the record below, the appellant submitted an opinion of Canadian counsel with respect to this particular issue, hoping to convince the bankruptcy court that under Canadian law they should enforce this particular transaction. And that opinion says, based on the presumed facts, and it lists the facts in the opinion, we would, it is our view that the integrity of the process was not affected. Of course, however, the bankruptcy court actually held a trial and actually facts were presented. And the facts were different from the presumed facts that the opinion of appellant's Canadian lawyers were relying on. And in connection with that trial, the bankruptcy court said, look, these are the facts that I found. There was collusion. There was a telephone call that took place. Was there any finding that the amounts were affected? In other words, was there finding that the final amount was lower than it would have been had there not been this collusion? There was no express finding on that except that I believe on page 10 of the bankruptcy court's decision, the bankruptcy court expressly found that as a result of this transaction, Coon was able to get the full amount of what he believed to be his bankruptcy proceeding to the detriment of other creditors in that proceeding. There was no specific finding and there was no proof offered by the appellant during the course of the trial that Sagecrest raised its bid as a result of the arrangement it reached with Mr. Coon, and Mr. Coon was the precipitating reason or the cause for the raising of that bid. Well, but presumably it would have lowered their bid because the cost they were willing to pay was now diverted in part to Mr. Coon. Exactly. Exactly. They offered no testimony, no proof with respect to that specific issue. So counsel's comments today that the bid would have been higher is based upon facts not in the record and facts which were never proven. But can I ask you, though, to focus on the choice of law issue? So obviously the bankruptcy court didn't deal with it. They basically said we don't have to decide because under either American or Canadian law the result is the same. The district court concluded that U.S. law properly applied. Do we have to choose this? Under Roby, under Bremen, do we have to address choice of law before we get to the merits or can we do what the bankruptcy court did and say it's a wash, doesn't matter, same result? I believe you can do what the bankruptcy court did, that you can look at the Canadian law and you can find that there's really no conflict here, that the law provisions of both U.S. and Canada and Ontario with respect to this issue are the same. And I would note that both Bremen and Roby, which came 22 years after Bremen, really involved consent, formed consensual provisions as opposed to really choice of law provisions. This issue in this case does not involve a consent to jurisdiction in Canada. This is solely a choice of law provision. And when you get into a solely choice of law provision, you get the dynamics are somewhat different. I mean, the penalty. Alito, I'm sure that's true as a matter of practice. What's your basis for saying that as a matter of law? Well, if you look at the Roby case, this Court cited four exceptions to enforcing the parties. In that case, it was a consent to jurisdiction clause. It was both, not both. No, not no. I mean, the decision went beyond the actual clause that was at issue and talked about choice of laws, for sure that it did that. But the actual issue that was before it, the actual clause that was before it, was a consent to jurisdiction as to whether the plaintiffs could bring securities action in the United States or by reason of the fact of having agreed to this consent to jurisdiction clause, the action had to be brought in London. And the Court took from the Bremen decision what it called were four exceptions to the enforcement of a consent to jurisdiction clause. And Bremen was clearly only a consent to jurisdiction clause. There was no discussion in Bremen whatsoever concerning choice of law. But it took those four exceptions. And our view is that if any of those exceptions are available, then this Court and then the Court should not give credence and should not follow the choice of law. One of the exceptions is public policy. Kennedy, applying the choice of law clause here would not have violated public policy, right? I mean, applying Canadian law to what was clearly a Canadian transaction? It would violate public policy if you believe what Appellant is saying, which is that Canadian law would come up with a different decision. If Canadian law were different than U.S. law in this, then it would violate U.S. public policy. But if they're the same, it wouldn't, right? So that's why I don't know if you have to make the distinction between the two. If you start from the premise that the Canadian and U.S. law are the same, yeah, there's no ‑‑ I'm not sure that whatever Canadian law was, I don't know that it would have violated public policy to say Canadian law should apply to this agreement because of all the Canadian context, Canadian property. I don't think it matters. I agree with you that it doesn't matter. But I don't know that it is correct to say that applying Canadian law, whatever Canadian law might be, would violate public policy. I see a little distinction there, Your Honor. One thing is, yes, I don't think it violates Canadian law to put a choice of law provision in the agreement as Canadian law applies. But when you come to the context of enforcing it in the U.S., in a U.S. bankruptcy court, and you look at ‑‑ That's the bigger picture as to whether there's collusion. I mean, it would violate the public policy of both countries if you enforce a collusive agreement. So I don't know. Again, it goes back to that. I don't think there's a real difference. The public policy in the U.S. is pretty strong because this particular action had it taken place in the U.S. bankruptcy case, and it took place in a Canadian insolvency case. It was a Canadian companies arrangement act. But had it taken place in the U.S. bankruptcy, it probably would have been a crime under Title 18, 152, or subsection 6. So you're agreeing with the district court's analysis for choice of law? You're agreeing with it and defending it? Yes. But I'm also saying it doesn't matter. It doesn't matter. The district court could have easily said, and I think would have been correct in finding that whether I apply Canadian law or U.S. law as the bankruptcy court did, the result is going to be the same. These agreements are nonenforceable. They violate the impari delicto provision. They subverted the integrity of the process. Our view at this point is stay noble anyway, so we could basically go right to the bankruptcy court decision. That's right. Under Roe v. I think that this court, I think the language of Roe v. also says that we may, of course, affirm the judgment on any basis in the record, provided there's substantial evidence supporting the record. And I think the record is pretty strong, both with respect to the Canadian and U.S. issues. The facts remain the same. They don't change whatever law you apply. And I think the bankruptcy court was absolutely correct that under Canadian law and U.S. law, these are unenforceable agreements. And as I said, I think the U.S. public policy reasons are really very strong. We have a specific provision in the Bankruptcy Code, 365N, which says that these, you can undo these agreements if the bankruptcy court wants to. And then we have this criminal statute which says that it's a crime to forego or offer any kind of money or other consideration to take specific actions within the context of a bankruptcy. So it would be, in our judgment, that's what the courts below found. And I think they were correct in their decisions. And we respectfully request that this court affirm the decision of the district court. Thank you. Thank you. Mr. Rubato. Just briefly, judges. I do think it does matter that the district court only analyzed the case strictly under the American Bankruptcy Code, and it should have been analyzed under the Canadian statutes. That may be. But if we find that the findings of fact in the bankruptcy court's order are not clearly erroneous, and we agree, I mean, the law, we would be addressing de novo, but that Canadian law does not require a different result, does it matter what Judge Bryant did in the district court? I can agree with that, but I do think he missed it. His focus was on the American Bankruptcy Code. He paid passing reference to the Canadian statute. He didn't look at the regal constellation case, which is really the controlling case in terms of the latitude of parties to move in and out of bidding. He certainly didn't analyze that the bid of Sagecrest was increased threefold. There is nothing in the record that Sagecrest was going to bid more than that. Mr. May presented no evidence. He represents Sagecrest. And so I do think it does matter, and if you're going to look at the Canadian law, you have to look at it in all its incantations, and there are distinctions that are made in Canada regarding flexibility of bidders to move in and out of a process. We did put in an expert report in Canada that this wasn't even covered by the Competition Act because it technically wasn't a bid. It was a process to see if creditors could get more money, and creditors did get more money. And so that's why the monitor who ran the process, who knew that Mr. Cohen was no longer backing the Cocoa-Fonsorti bid, was satisfied, and that's why the Court was satisfied. If the leadership had concluded that the arrangement before him violated federal law, say violated a criminal provision, would he in that circumstance have been free to defer to Canadian law? I think so. I think he had to analyze this case strictly under Canadian law. It was done in Canada involving a Canada hotel and a Canada bankruptcy by Canadian attorneys. So if a Canadian law says that you can basically use torture to prevent somebody from making a bid, we would enforce Canadian law? You would enforce Canadian law if there was a remedy for punishing the torturer, and there was. There was remedies in Canada for punishing true bid rigging or something in violation. The only way you would disregard Canadian law, from my reading of Roby, if there's no remedy in Canada. There's a lot of remedies in Canada, and that's the point of the choice of law issue. Thank you. Thank you.